[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
After a lengthy hearing on this limited contested action for dissolution of marriage and/or legal separation, the court finds the allegations of both the complaint and cross complaint to have been proven, and since paragraph two of each has been proven, the court has jurisdiction in this matter. Accordingly, judgment of legal separation is hereby entered on the basis of irretrievable breakdown of the marriage with no hope of reconciliation.
As to the award of assets, alimony and attorneys' fees, the court has taken into account the criteria set forth in § 46b-62,46b-81 and 46b-82 of the Connecticut General Statutes. Specifically, as to some of the criteria, the court finds as follows:
 1. The length of the marriage will be ten years as of March 17, 1996. The length of the marriage prior to the time of institution of this action by the plaintiff, husband, is approximately eight and one-half years.
 2. As for the cause of the legal separation, the court finds, as previously stated, irretrievable breakdown of the marriage with no hope of reconciliation. As to the issue of fault in the marriage, there is, based upon the testimony of the parties and the exhibits, the demeanor of the witnesses on the witness stand, the parties attitude and the parties' responses to questions, a finding of credibility on both sides and a lack of credibility on both sides as to certain events. The incidents of alleged intolerable cruelty on the part of the husband occurred primarily between 1987 and 1991, and it appears that the incidents were CT Page 527 largely based on the tension created by the husband's son living with them and being in a hospital or apartment near by and the demands put on the parties by the son and his emotions all as a result of a tragedy in which he became a paraplegic as a result of an accident at a young age. The court has taken into consideration that there is no evidence of incidents by the husband between 1991 and 1994 and finds the incidents that occurred in 1995 in the marital home to be insufficient to find intolerable cruelty on the part of the plaintiff husband. In one instance both parties were arrested. In both instances, there is a divergence of testimony as to what happened, and the court is not convinced that the plaintiff husband's action reached the stage of intolerable cruelty. These incidents happened after the dissolution action was initiated, after disputes over dissolution issues and a contested contempt motion, and since the parties were still living together, the tension between the two was no doubt high. It appears that some of the plaintiff husband's actions were accidental and that the actions of the defendant wife in constantly haranguing him and blaming him for everything both before and after the action was initiated, as well as actions taken as to the plaintiff husband's belongings, were the result of tension between the parties. Accordingly, the court finds that neither party has proven intolerable cruelty on the part of the other and will not factor fault in as a cause of the dissolution and/or separation. Further, if there was intolerable cruelty, it was essentially equal by both parties.
 3. The plaintiff husband is fifty-nine years of age and the defendant wife is forty-five years of age, a fourteen year difference.
 4. As to the health of the parties, it is clear that the plaintiff husband is totally disabled, temporarily as to his knees, but permanently as to his ability to work because of the problems associated with his lungs and his breathing. Further, he is receiving social security disability at apparently 100%. He cannot work. The defendant wife is also not in good health although her problems would appear to be more than the problems resulting from the incident in which the car or van injured her ankle. The court's opinion is that she is able to work, although she may be somewhat limited in what she can do.
CT Page 528
 5. Plaintiff's income is more than the wife's, but his is all retirement and disability and will not change. Further, at age 59 with these disabilities he is very unlikely to be able to obtain employment. As for the defendant wife she is much younger and the court does believe that she has an earning capacity notwithstanding her physical limitations.
 6. The defendant wife has a better opportunity in view of her ability to work for future acquisition of assets and income. As for the needs of the parties, at this point the defendant wife has no income and the plaintiff husband does. However, the plaintiff husband has much more in liabilities.
 7. As for the contribution of the parties, the court believes that the plaintiff husband brought to the marriage $7,408 in cash and collectibles plus an inheritance of $84,649 for a total contribution in that regard of $92,057. The court does believe that the claim of the defendant wife that she contributed $29,000 to the marriage. This results in a 76% contribution by the plaintiff husband and a 24% contribution by the defendant wife. The plaintiff husband worked throughout most of the marriage and was the source of income until he became disabled and retired. The wife had no children of the parties to raise and did not work. However, the plaintiff husband knew at the time of the marriage that she would not be able to work, there is no indication that at any time in the marriage he urged her to obtain employment, and certainly the language barrier was no doubt an impediment at that time to her obtaining employment. She did take English lessons, but at this point, she still does not speak English well. Although the plaintiff husband spent money on the stock market, on some gambling and on his children, it should be noted that throughout he supported Samuel, the son of the defendant wife, and even through his company and his own contributions payed for private school for said son in the amount of $13,000.
Accordingly, the court hereby enters the following orders concerning assets, liabilities, alimony and attorneys' fees:
 1. The marital home at 39 Sam Green Road, Coventry, Connecticut is to be put up for sale immediately with a broker to be agreed upon by the parties to be sold as soon as possible. The parties have stipulated as to the appraised value so it should be unnecessary for another appraisal. However, if one is desired, the parties are free to come back to the court to select a neutral appraiser. CT Page 529 The net proceeds of the sale are to be divided, 76% to the plaintiff husband and 24% to the defendant wife. The parties shall be permitted to reside in the home until such sale is consummated. During that period, both the plaintiff husband and the defendant wife are ordered to refrain from imposing any restraint upon the person of the other, are restrained from harassing, assaulting or otherwise making life uncomfortable for the other party. Neither party is to diminish the physical assets that are presently in existence.
 2. As to the furniture, furnishings and collectibles, each party is to take those items they brought into the marriage. Beyond that the remainder are to be divided on a fifty-fifty basis between the parties. If the parties cannot agree, the court orders the parties to attempt to resolve this personal property issue, including the collectibles, with an attorney arbitrator who has done this in the past, and failing that, the parties may come back to this court for a decision. Cost of the arbitrator shall be shared equally between the parties, although if wife does not have funds, husband shall pay and be reimbursed at the time of the sale of the house.
 3. The husband's pension shall remain as it is with the wife remaining as irrevocable beneficiary thereof at husband's death. The Pax Mutual Fund is to be sold with the proceeds to be used to make the mortgage payments and other expenses of the home such as fuel, electricity, telephone, trash collection, cable tv, and maintenance. Any balance remaining shall be divided by the parties equally. This Pax Fund is to be sold at the earliest possible date.
 4. The parties are to file a joint tax return for 1995. The tax refund, if any, is to be used to make the mortgage payments, fuel, electricity, telephone, trash collection and cable tv and maintenance prior to sale, and if there is any balance remaining, it is to be divided on a fifty-fifty basis. Cost of tax preparation shall be shared equally although the husband may advance same and be reimbursed at the time of the sale of the house.
 5. One Florida timeshare is to become the property of the plaintiff husband and the other the properly of the defendant wife.
 6. The Dakota Dodge truck shall remain in the name of the plaintiff husband, and if it is not already in his name, the defendant wife will promptly execute such papers as are necessary to give him full and sole title.
CT Page 530
 7. Each party shall keep the money in bank accounts or credit unions as listed on their financial affidavits, or whatever is in their accounts at the time they utilize same.
 8. The plaintiff husband shall pay to the defendant wife at the time of the sale of the marital home the sum of $672 representing one half of the 1994 federal income tax return refund which was ordered turned over to the defendant wife toward contempt arrearage.
 9. The husband is to be responsible for the debts on his financial affidavit and hold the wife harmless therefrom. The wife is to be responsible for the debts on her financial affidavit and hold the husband harmless therefrom.
 10. Until such time as the marital home is sold and the sale is consummated, the husband is to continue to pay the mortgage and other expenses of the house listed on his financial affidavit with the exception of what is to be paid from the 1995 tax refund and the Pax Fund as previously described. Commencing on the next alimony payment, the plaintiff shall pay the wife the total sum of $120 a week alimony until such time as the house is sold and the premises vacated, at which time the alimony shall be increased to $236 per week for two years and then reduced to $120 per week. The alimony shall terminate four years from the date hereof and shall be nonmodifiable as to term. Further, alimony shall cease upon the death of either party to the marriage, the remarriage of the defendant wife or cohabitation by the defendant wife. The alimony is time limited as specified, and the basis for that is that the court believes that the wife has an earning capacity that will make her self-sufficient in two years and totally self-sufficient in four years. She is only 45 years old, she has skills as a hairdresser, in sewing, as a barber, and as a weaver of custom clothes. In addition, she studied mathematics and languages while in Korea and she operated and owned two barber shops and a weaving business in Korea. She also managed same, doing the books, the hiring and the ordering of supplies. During the marriage, in the United States, she completed hairdressing school and sewing school, all of which was paid for by the plaintiff husband. She has also taken courses in the English language, and although she is not yet fluent in English, further courses should enable her to communicate well in English, both verbally and in writing. Accordingly, the court believes the defendant wife can, within a short period of time, certainly in less than four years, develop all of the skills necessary for her CT Page 531 to become employed and totally self-sufficient. Said alimony is for her support and maintenance.
 11. Plaintiff husband shall maintain his existing life insurance and shall name the defendant wife as beneficiary in the amount of the remaining alimony of the aforementioned four years which would have been payable to her if he had not died. The plaintiff husband shall have full discretion in naming any contingent or subsequent beneficiaries.
 12. Plaintiff husband will continue to keep the defendant wife as a beneficiary on his health insurance for as long as the law allows, including any COBRA provision. Defendant wife will pay any premium as a result of her being a beneficiary beyond what the plaintiff husband is presently paying.
 13. The plaintiff husband's contempt of court as well as his non-compliance with discovery orders (i.e. his failure to inform defendant wife on his financial affidavit or elsewhere of his life insurance) have contributed to the defendant wife incurring additional legal fees. Plaintiff husband is ordered to pay to defendant wife's attorney, counsel fees in the amount of $2500 at the time of the consummation of the sale of the marital premises or within one year, whichever is earlier. The court finds Attorney Fried's attorney's fees to be fair, just and reasonable.
 14. The plaintiff husband is also ordered to pay to the defendant wife at the time of the consummation of the sale of the marital premises, the sum of $187, representing one half of the value of the gun sold in January 1995 and the cashed in savings bonds which sale and action on the savings bonds were in violation of court order.
Rittenband, J.
CT Page 531